DESAI LAW FIRM, P.C.
Aashish Y. Desai, Esq. (SBN 187394)
Adrianne De Castro, Esq. (SBN 238930)
3200 Bristol Ave., Suite 650
Costa Mesa, CA 92626
Tel: (949) 614-5830
Fax: (949) 271-4190
aashish@desai-law.com
adrianne@desai-law.com

David Borgen (SBN 099354), Of Counsel
dborgen@gbdhlegal.com
Laura Ho (SBN 173179)
lho@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

Attorneys for Plaintiffs, all others similarly situated

[Additional counsel on following page.]

Electronically FILED by
Superior Court of California,
County of Los Angeles
12/21/2023 1:03 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES, COMPLEX CIVIL

| | |
|---|---|
| DANIEL QUINTILIANO, individually and on behalf of all those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> VALNET, INC., a Canadian Corporation, VALNET, U.S., INC., a Delaware Corporation, and Does 1-10, <br><br> Defendants. | CASE NO.: 23STCP04605 <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> (1) Failure to Pay Minimum Wages under the Cal Lab. Code and Wage Order 4; <br><br> (2) Failure to Pay Overtime Wages under the Cal Lab. Code and Wage Order 4; <br><br> (3) Failure to Provide Meal Periods under the Cal Lab. Code and Wage Order 4; <br><br> (4) Failure to Provide Rest Periods under the Cal Lab. Code and Wage Order 4; <br><br> (5) Failure to Furnish Accurate Wage Statements under the Cal Lab. Code and Wage Order 4; <br><br> (6) Failure to Reimburse Business Expenses under the Cal Lab. Code; <br><br> (7) California Unfair Competition Law <br><br> <u>DEMAND FOR JURY TRIAL</u> |

1

**Additional Counsel:**

James E. Goodley (*Pro Hac Vice to be filed,* PA Bar No. 315331)
james@gmlaborlaw.com
Ryan P. McCarthy (*Pro Hac Vic to be filed,* PA Bar No. 323125)
ryan@gmlaborlaw.com
GOODLEY McCARTHY LLC
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215.394.0541

Attorneys for Plaintiffs, all others similarly situated, and
all other aggrieved employees

//

//

## I.    __INTRODUCTION__

1.      Plaintiff Daniel Quintiliano brings this class action against Defendants Valnet, Inc. and Valnet, U.S., Inc. (collectively "Defendants" or "Valnet") on behalf of himself and all other former and current paid content creators who performed work for Valnet's digital properties. Valnet operates at least 25 brand properties (each of which runs an associated website and most of which, a digital video channel) dedicated to publishing written articles, videos, and other content related to consumer products, entertainment, sports, and other consumer interests.  The more traffic the websites and channels attract, the more advertising revenue Valnet generates.  Valnet pays Plaintiff and similarly situated class members ("Content Creators") a small piece-rate (per-article) payment to create and edit the written, video, and audio content on these team sites.  Content Creators' content is the core of Valnet's business.

2.      During the entire class period, Valnet uniformly and consistently misclassified Content Creators as independent contractors in order to avoid its duties and obligations owed to employees under California law and to gain an unfair competitive advantage over its competitors that properly classify its workers as employees. Valnet controls and directs the performance of Content Creators in writing and editing content for its websites, both under contracts it enters with Content Creators and in fact. Content Creators create the written, video, and audio content that makes up Valnet's property website and digital channel network and generates advertising revenue. Their work is central to Valnet's business. Content Creators do not create and edit content for their own independent businesses, but create content solely for Valnet property websites and digital channels.

3.      As a result, Plaintiff alleges that all current and former Content Creators who worked in California: (1) are entitled to unpaid minimum wages (Cal. Labor Code §§ 1182.12, 1194, 1197, 1197.1; California Industrial Welfare Commission Wage Order 4, Cal. Code Regs. tit.

8 § 11040 ("Wage Order 4") § 4; and the California.Minimum Wage Order); (2) are entitled to unpaid overtime wages (Cal. Labor Code§§ 510; Wage Order 4 § 2); (3) are owed meal and rest period premiums (Cal. Labor Code§ 226.7, 512; Wage Order 4 §§ 11, 12); (4) are owed statutory damages for Valnet's failure to provide itemized wage statements (Cal. Labor Code§§ 226,226.3; Wage Order 4 § 7(B)); (5) are owed reimbursement of business expenses because Valnet required Content Creators to have computers, smart phones, and internet access for work-related tasks, as well as expenses related to watching the games Content Creators were expected to write about (Cal. Labor Code§ 2802); and (6) are entitled to restitution and injunctive relief under the Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 et seq.).

4.    Because Defendants have willfully deprived Plaintiff and similarly situated Content Creators of the rights and protections California law guarantees to employees, Defendants' classification of Content Creators as "independent contractors" is part of ongoing unfair/unlawful business practices by Defendants.

## II.    THE PARTIES,

5.    Plaintiff Daniel Quintiliano is an adult individual who was paid by Defendants for his work as a Content Creator for Valnet's brand property "Movie Web" between approximately November 2022 and April 2023, but Valnet classified him as an independent contractor.  During this time, Plaintiff resided and worked in Los Angeles, California, where he also currently resides.

6.    Defendant Valnet, Inc. is a Canadian corporation based in Montreal, Quebec. Jointly with co-Defendant Valnet, U.S., Inc., Valnet, Inc. operates and maintains media websites and digital channels, including those associated with its at least 25 brand properties.

7.    Defendant Valnet, US, Inc. (jointly with Valnet, Inc., "Valnet" or "Defendants") is a Delaware corporation based in Miami, Florida.  Jointly with co-Defendant Valnet, Inc., Valnet,

U.S., Inc.  operates and maintains media websites and digital channels, including those associated with its at least 25 brand properties.

### III.    JURISDICTION AND VENUE

8.      This Court has jurisdiction over Plaintiff's and Class Members' claims under Labor Code§§ 226,226.3, 226.7, 512, 1182.12, 1194, 1197, 1197.1, 2802, Business & Professions Code§§ 17200, *et seq*., and Wage Order 4.

9.      Venue is proper pursuant to Code of Civil Procedure section 395(a) because Defendants do not reside in the state and have not designated a principal business office in California with the California Secretary of State.  As such, venue is proper in any county in California.

### IV.    FACTUAL BACKGROUND

10.     Valnet is a global media enterprise comprising approximately 25 brand properties including but not limited to Movie Web, Screen Rant, Comic Book Review and HotCars.  See https://www.valnetinc.com/en/publishing-detail#our_brand (last accessed 12/20/2023).

11.     Valnet's brand properties are each dedicated to publishing written, video and audio content related to particular special reader and viewer interests.  For example, Movie Web and Screen Rant publishes movie and television show analysis and news related to the same.  Comic Book Review publishes comic book analysis and news related to the same.  Hot Cars publishes analysis related to new and classic automobiles.

**A.  Defendant Uniformly Misclassifies Content Creators as Independent Contractors.**

12.     To generate advertisement revenue from its properties, Valnet requires Content Creators to produce a steady stream of written, video, and audio content on its brand websites and digital channels.    Valnet hires Content Creators to create the content.    See, e.g.,

https://valnetconcept.applytojob.com/apply/q2WZFzP7ua/Freelance-Writer-TheTravel    (last accessed 12/20/2023).  Valnet pays Content Creators on a piece-rate (per-article) basis.

13.    Valnet classifies its Content Creators as independent contractors. Defendant requires Content Creators to sign a "Master Services Agreement," which states that Content Creators' relationship with Valnet is as an independent contractor relationship.  See, Ex. 1 ("IC Agreement").  Valnet does not withhold payroll taxes from its biweekly payments to Content Creators.

14.    Though Valnet classifies Content Creators as independent contractors, Valnet exercises substantial control over the manner and means by which Content Creators accomplish their work.

15.    Content Creators are prohibited from subcontracting their work to other writers or producers with Valnet's permission.  IC Agreement ¶ 4.3.  Therefore, Content Creators must perform the work themselves, not as independent businesses.

16.    Content Creator's work is subject to Valnet's complete and total discretion as to approval or revision of the work product.  IC Agreement ¶ 4.7.

17.    Content Creators are prohibited for six months after termination from soliciting Valnet's clients/customers, employees, and contributors.  IC Agreement ¶ 4.10.

18.    Content Creators are required to assign all rights to Valnet, all of their content and intellectual property.  IC Agreement ¶¶ 6.1 - 6.5.

19.    Valnet gives Content Creators instructions about how to conform their writings to increase site and channel traffic from online search engines, known as "search engine optimization." Content Creators are told how to craft headlines, order content and upload pictures so as to attract

the most viewers to each content post.

20.     The content created by Content Creators is core to Valnet's business. The more content Content Creators produce, the more traffic to each property website and channel, and the more revenue Valnet can generate from advertisers. Valnet pressures Content Creators to maintain a constant flow of posted content on these team sites to attract advertisers, but Content Creators do not see the benefits of advertising revenue. Content Creators take no part in negotiating advertisements on Valnet websites and channels; all the negotiations for advertisements are handled directly by Valnet.  Content Creators have no stake in Valnet's profits or losses.  Rather, Content Creators merely receive piece-rate wages from Valnet.

21.     While Content Creators were not always under direct supervision by Valnet, neither were they independent journalists who sold their stories to the highest bidder.  Content Creators created and edited content for the purpose of posting it on Valnet's brand sites and channels.

22.     Valnet does not hire Content Creators for their unique set of skills. Defendant does not require, for example, a college degree or prior professional experience in journalism.

23.     Valnet requires Content Creators to have access to the internet on their personal computers and smart phones, but Content Creators' work does not require any special tools or equipment. Valnet provides Content Creators with access to internal communication and editing software.

**B.  <u>Valnet Pays Content Creators Small Piece Rate Compensation Insufficient to Meet the Legal Minimum Wage.</u>**

24.     Valnet pays Content Creators on a piece-rate (per-article) basis. Valnet does not increase the piece rate pay as Content Creators work more hours on their articles.

25.     Plaintiff, for example, regularly produced approximately 3-4 Movie Web articles

per day, five days or more per week, spending approximately 2-3 hours per article (plus additional time being trained on Valnet policies, selecting an article and communicating with Valnet management). Plaintiff was only paid $15 per article he wrote. Plaintiff never received any other type of compensation from Valnet. Given the number of hours Content Creators work for Valnet, the piece-rate payment is frequently, if not always, under the minimum wage required by California law.

26.    Other Content Creators frequently receive effective hourly pay at far below the California minimum wage.

**C.  Defendant Does Not Pay Content Creators Overtime Wages.**

27.    Content Creators are sometimes assigned duties that require them to work over eight hours per day or forty hours per week.

28.    Plaintiff, for example, was sometimes assigned to write four or more articles in one day. On days like these, Plaintiff worked more than eight hours in a day. Valnet did not pay Plaintiff overtime wages for those hours worked.

29.    Plaintiff, for example, was sometimes assigned to write 20 or more articles in one week. On weeks like these, Plaintiff worked more than forty hours in a week. Valnet did not pay Plaintiff overtime wages for those hours worked.

30.    Valnet does not pay any Content Creator overtime wages for the time they work beyond eight hours per day or forty hours per week.

**D.  Defendant Does Not Provide Meal or Rest Periods for Content Creators.**

31.    Content Creators regularly work more than three and a half hours per day. Valnet does not authorize or permit Content Creators to take ten-minute uninterrupted rest periods for every four hours or major fraction thereof worked.

32.    Content Creators frequently work over five hours per day without a meal period. Valnet does not provide a 30-minute off-duty meal period for Content Creators within the first five hours of work per day, nor does it provide a second meal break for Content Creators who work more than ten hours in a day.

33.    Valnet has never paid Content Creators with meal and rest break premiums for its failure to provide meal and rest breaks.

**E.    Defendant Does Not Provide Content Creators with Accurate Itemized Wage Statements.**

34.    Valnet fails to provide Content Creators with any wage statements, let alone wage statements that show the actual hours worked, all overtime wages, gross and net wages earned, all applicable hourly rates and corresponding number of hours worked at each rate, deductions, the inclusive dates of the period for which the employee is paid, the name of the employee or the employee's social security number, and the name of the employer.

**F.    Defendant Does Not Reimburse Content Creators for Reasonable Business Expenses.**

35.    Valnet requires Content Creators to use their own computers, smart phones, and internet access to create and edit content, as well as to communicate with their editors and other Valnet supervisors. Valnet does not reimburse Content Creators for their personal computers, smart phones, or internet access expenses.

**V.    CLASS ACTION ALLEGATIONS**

36.    Plaintiff seeks to proceed as a class action pursuant to California Code of Civil Procedure § 382 on behalf of the following class of persons:

> All Content Creators who created and/or edited written, video, or audio content for any Valnet property, who worked in California at any time within the four years prior to the filing of the Complaint in this action and who were classified by Valnet as independent contractors.

37.    The putative class is so numerous that joinder of all members is impracticable.

Although the precise number of such persons is unknown, and the facts on which the calculation of that number would be based are within the sole custody and/or control of Valnet, upon information and belief, Valnet has employed over forty Content Creators in California within the last four years.

38.     Among the proposed class, there is a well-defined community of interest in the questions of law and/or fact involved. Those common questions include, but are not limited to:

a.     Whether Valnet misclassified Class Members as independent contractors;

b.     Whether the same test for misclassification applies to both claims derived from the applicable wage order and statutory claims not derived from the applicable wage order;

c.     Whether Valnet was required to issue Class Members wage statements with certain required information;

d.     Whether Valnet is required to reimburse Class Members for a portion of their home internet, personal computer, and personal smart phone expenses; and

e.     Whether Valnet's Labor Code and Wage Order violations serve as predicate violations of the UCL.

39.     Common questions of law and/or fact predominate over questions that affect only individual Class Members. Plaintiff's claims are typical of those belonging to members of the Class, and Plaintiff can adequately represent the Class.

**FIRST CAUSE OF ACTION**
**Minimum Wage Violation**
**[Cal. Labor Code§§ 1182.12, 1194, 1194.2, 1197, 1197.1,**
**Wage Order 4; Minimum Wage Order]**

40.     Plaintiff, on behalf of himself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

41.     California Labor Code §§ 1194, 1197, 1197.1 and Wage Order 4 entitle employees to an amount equal to or greater than the minimum wage for all hours worked.

42.     Valnet paid Plaintiff and Class Members on a low piece-rate (per-article) basis.

Given the number of hours Plaintiff and Class Members worked each day and week, this piece-rate compensation was insufficient to meet the legal minimum wage.

43.    As a result of Valnet's failure to Plaintiff and Class Members the legal minimum wage, Plaintiff and Class Members are entitled to recover the unpaid balance of the full amount of the minimum wage for all hours worked, plus interest, liquidated damages, and attorney's fees and costs, as well as further relief as described below.

## SECOND CAUSE OF ACTION
### Failure to Pay Overtime Wages
### [Cal. Labor Code§§ 510; Wage Order 4]

44.    Plaintiff, on behalf of himself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

45.    California Labor Code § 510 and Wage Order 4 entitle employees to overtime premiums for hours worked in excess of eight (8) in a given day, forty (40) in a given workweek, or on the seventh day worked in a single workweek.  All hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation.

46.    While misclassified as independent contractors, Plaintiff and Class Members worked in excess of eight hours per day and in excess of forty hours per week, and Valnet unlawfully failed to pay Plaintiff and Class Members the proper overtime compensation.

47.    As a result of these violations, Valnet is liable for unpaid overtime wages, interest, and attorneys' fees and costs, as well as further relief as described below.

## THIRD CAUSE OF ACTION
### Failure to Provide Meal Periods
### [Cal. Labor Code§§ 226.7, 512, and 1194; Wage Order 4]

48.    Plaintiff, on behalf of himself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

9

49.     California Labor Code§ 512(a) states in pertinent part, "[A]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with meal period of not less than 30 minutes. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."

50.     Wage Order 4 states, in relevant part, "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes." If no meal period is provided, the Wage Orders require the employer to "pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided."

51.     California Labor Code § 226.7 states, in relevant part, "An employer shall not require an employee to work during a meal ... period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission." Section 226.7 requires an employer to pay one additional hour of pay at the employee's regular rate if the meal or rest period is not provided.

52.     Valnet has had no policy or practice of providing meal periods to Plaintiff or Class Members, and Valnet failed to provide meal periods to Plaintiff and Class Members or an hour of premium pay for each missed meal period as required by California Labor Code §§ 226.7 and 512, and Wage Order 4.

53.     As a result of Valnet's willful and unlawful failure to provide meal periods to Plaintiff and Class Members and Valnet's failure to pay an hour of premium pay for each missed meal period, Plaintiff and Class Members are entitled to recover one hour of pay at their regular rate of compensation for each workday that a meal period was not provided, plus interest, attorney's

fees and costs, as well as further relief as described below.

## FOURTH CAUSE OF ACTION
### Failure to Provide Rest Periods
### [Cal. Labor Code§§ 226.7 and 1194; Wage Order 4]

54.     Plaintiff, on behalf of himself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

55.     California Labor Code § 226.7 states, in relevant part: "An employer shall not require an employee to work during a ... rest ... period, and if an employer fails to provide an employee a rest period ... the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

56.     Wage Order 4 states, in pertinent part, "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. The Wage Orders require an employer to "pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."

57.     Valnet has had no policy or practice of providing rest periods to Class Members, and Valnet failed to provide rest periods to all Class Members or an hour of premium pay at the regular rate for each day a rest period was not provided.

58.     As a result of Valnet's willful and unlawful failure to provide rest periods to all Class Members and Valnet's failure to pay an hour of premium pay at the regular rate for each day a rest period was not provided, Plaintiff and Class Members are entitled to recover one hour of pay at their regular rate of compensation for each workday that a rest period was not provided, plus

interest, attorney's fees, and costs, as well as further relief as described below.

**FIFTH CAUSE OF ACTION**
**Failure to Provide Accurate Itemized Wage Statements**
**[Cal. Labor Code§§ 226 and 226.3; Wage Order 4)**

59.     Plaintiff, on behalf of himself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

60.     California Labor Code § 226 provides, in relevant part, that every employer must furnish each employee with an itemized wage statement at the time of each payment of wages showing the total numbers of hours worked each pay period, gross wages, net wages, all deductions, all applicable hourly rates of pay, the dates of the period for which the employee is paid, the name of the employee and the last four digits of their social security number or employee identification number, and the name and address of the legal entity that is the employer.

61.     Wage Order 4 requires employers to provide, at the time of each payment of wages, "an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer."

62.     Valnet willfully failed to furnish Plaintiff and Class Members, upon each payment of compensation, itemized wage statements.

63.     During all relevant times, Class Members were injured by these failures because, among other things, they were confused about whether they were paid properly and/or they were misinformed about how many total hours they worked in each pay period.

64.     California Labor Code§ 226(e)(l) provides that an employee suffering injury as a result of a knowing and intentional failure by an employer to provide accurate itemized wage statements is entitled to recover the greater of all actual damages suffered or fifty dollars ($50) for

the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000). Pursuant to California Labor Code § 226(h), Plaintiff and Class Members are entitled to injunctive relief to ensure Defendant's compliance with California Labor Code § 226.

65.     Plaintiff and Class Members are entitled to an award of costs and reasonable attorneys' fees under California Labor Code § 226(h), as well as further relief as described below.

## SIXTH CAUSE OF ACTION
### Failure to Reimburse Business Expenses
### [Cal. Labor Code § 2802)

66.     Plaintiff, on behalf of himself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

67.     California Labor Code § 2802 requires employers to indemnify an employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of the employee's duties.

68.     During all relevant times, Valnet failed to indemnify Plaintiff and Class Members for their expenses related to using their personal computers, using their personal smart phones, and maintaining access to the internet. Valnet also failed to reimburse Plaintiff and Class Members for the costs associated with viewing the games they were expected to write about. Plaintiff and Class Members are entitled to indemnification of their expenses related to their home internet payments plus prejudgment interest pursuant to California Labor Code § 2802.

69.     Plaintiff, on behalf of himself and similarly situated Class Members, requests further relief as described below.

## SEVENTH CAUSE OF ACTION
### Unfair Competition Law Violations
### [Cal. Bus. & Prof. Code §§ 17200 et seq.]

70.     Plaintiff, on behalf of himself and all Class Members, re-alleges and incorporates

by reference the allegations contained in the paragraphs above as if fully set forth here.

71.    California Business & Professions Code §§ 17200 et seq. prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practices.

72.    Plaintiff brings this cause of action individually and representative of all others subject to Defendant's unlawful acts and practices.

73.    In the four years prior to the filing of this Complaint, Valnet has committed unlawful, unfair, deceptive, and/or fraudulent acts as defined by California Business & Professions Code § 17200. Valnet's unlawful, unfair, deceptive, and/or fraudulent business practices include, without limitation, failing to pay the minimum wage, failing to pay overtime wages, failing to provide mandated meal and rest periods, failing to furnish accurate itemized wage statements, and failing to indemnify Content Creators for business expenses in violation of California law.

74.    As a result of these unlawful, unfair, and/or fraudulent business practices, Valnet reaped unfair benefits and illegal profits at the expense of Plaintiff and Class Members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to grant the following relief against Defendant as follows:

A.  Certify this action as a class action pursuant to California Code of Civil Procedure § 382 for Class Members, and appoint Plaintiff as Class Representative and his attorneys as Class Counsel;

B.  Direct class notice to all Class Members;

C.  Declare that Defendants misclassified all Class Members as independent contractors;

D.  Award minimum wages and liquidated damages to Plaintiff and Class Members;

E.  Award overtime wages to Plaintiff and Class Members;

F.  Award compensation for Defendants' failure to provide meal periods and rest periods;

G.  Award damages for Defendants' failure to provide accurate itemized wage statements;

H.  Award damages for Defendants' failure to reimburse necessary business expenses;

I.  Award pre-judgment and post-judgment interest;

J.  Order Defendants to make restitution to Plaintiff and other Class Members due to its unlawful and/or unfair business practices, including interest;

K.  Enjoin Defendant from violating California law; Award costs and expenses of this action;

L.  Award costs and expenses of this action;

M.  Award reasonable attorneys' fees; and

N.  Award such other relief as this Court deems just and proper.


### **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on claims so triable.


Dated:  December 21, 2023

Aashish Y. Desai, (Bar No. 187394)
Adrianne De Castro
DESAI LAW FIRM, P.C.
3200 Bristol Street, Ste. 650
Costa Mesa, CA 92626
Tel:  (949) 614-5830
Fax: (949) 271-4190

David Borgen (SBN 099354), Of Counsel
Laura L. Ho (SBN173179)
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA  94612

(Additional Attorneys continued on next page)

1  GOODLEY McCARTHY LLC
   James E. Goodley (*Pro Hac Vice to be filed,* PA Bar
2  No. 315331)
   Ryan P. McCarthy (*Pro Hac Vice to be filed,* PA Bar
3  No. 323125)
   One Liberty Place
4  1650 Market Street, Suite 3600
   Philadelphia, PA 19103
5
6  *Attorneys for Plaintiff*
   Daniel Quintiliano
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

**MASTER SERVICES AGREEMENT ("AGREEMENT")**
**EXECUTED ON** November 14, 2022 **(THE "EFFECTIVE DATE")**

BETWEEN:

**VALNET INC.**, a corporation duly incorporated under the laws of Canada, having its head office at 7405 TransCanada Highway, Suite 100, Montreal, Quebec, H4T 1Z2;

(hereinafter referred to as "**Valnet**");

AND:

Daniel Quintiliano, a person domiciled and residing at1155 S Grand Ave Unit 806, 90015;

(hereinafter referred to as "**Service Provider**");

(Valnet and Service Provider jointly referred to as the "**Parties**" and individually as a "**Party**")

**WHEREAS** Valnet is the owner and operator of various Assets (as defined herein) and seeks to purchase various Services (as defined herein) for exclusive use on its Assets.

**WHEREAS** Valnet wishes to retain the Service Provider for the provision of the Services as set out in a Statement of Work (as defined hereafter);

**NOW, THEREFORE** in consideration of the premises herein and for other good and valuable consideration, the Parties agree as follows:

1.    1.    **DEFINITIONS AND INTERPRETATION**

1.1.    1.1.    <u>Definitions</u>. Unless the context otherwise requires, the following terms have the following meanings:

1.1.1.1.1.1.    "**Animated Production**" shall refer to an animated audio video montage and if so requested containing captions/voice over including any post production work;

1.1.2.1.1.2.    "**Article**" shall refer to a literary work edited by the Editor and approved by Valnet in accordance with this Agreement;

1.1.3.1.1.3.    "**Assets**" includes Channels, Websites, related social media accounts and any other assets or properties owned and/or operated by Valnet;

1.1.4.1.1.4.    "**Backlink**" shall refer to incoming, 'do-follow' links that were negotiated on prospecting websites, back to Valnet Websites;

1.1.5.1.1.5.    "**Business Day**" means any day except Saturday, Sunday and any other day on which financial institutions are generally not open for business in the city of Montréal, Province of Québec (Canada);

1.1.6.1.1.6.    "**Channel**" shall refer to the YouTube Channels owned by Valnet;

1.1.7.1.1.7.    "**Competitor**" shall refer to an organization that operates any websites, YouTube channels or other any other types of properties that compete with or are similar to the Assets including the production of all children-oriented entertainment content as well as any list channels found on YouTube;

1.1.8.1.1.8.    "**Data**" shall refer to information entered by a Prospecting Specialist and approved by Valnet in accordance with this Agreement and/or SOW;

1.1.9.1.1.9.    "**Editor**" shall refer to the definition in a SOW;

1.1.10.    1.1.10.    "**Effective Date**" shall refer to the date this agreement is signed;

1.1.11. 1.1.11. "**Production**" includes a Video Production, Animated Production or Voice Over Production;

1.1.12. 1.1.12. "**Prospect**" shall refer to websites that have had the necessary data retrieved, as predetermined by Valnet;

1.1.13. 1.1.13. "**Prospecting Specialist**" shall refer to the definition in a SOW;

1.1.14. 1.1.14. "**Publisher**" shall refer to the definition in a SOW;

1.1.15. 1.1.15. "**Script**" shall refer to a completed written text for Video Productions;

1.1.16. 1.1.16. "**Video Production**" shall refer to an audio video montage (as per this agreement) and if so requested containing captions/voice over including any post production work;

1.1.17. 1.1.17. "**Voice Over Production**" shall refer to the narration or dialogue completed by a narrator as per the present agreement;

1.1.18. 1.1.18. "**Websites**" shall refer to all present and future websites owned and operated (directly and indirectly) by Valnet or any subdomain thereof including all present and future websites and all associated social media platforms;

1.1.19. 1.1.19. "**Work Product**" shall include all intellectual property rights including written articles, any Production and any narration, animation, artwork, music, sound design or other composition, on screen hosting or other work/services which there is a creation of copyrightable content. Included in the definition are any work or materials contributed related to the Services, being specially ordered and commissioned by Valnet through a SOW for use in connection with its Assets as well as all and any other entities/subsidiaries;

1.1.20. 1.1.20. "**Writer**" shall refer to the definition in a SOW.

1.1. 1.1. <u>Currency.</u> Unless otherwise specified, an amount in currency is inUS dollars.

1.2. 1.2. <u>Entire Agreement.</u> This Agreement, including any Statement of Work and all documents attached hereto or specifically referred to, constitutes the entire agreement between the Parties relating to its subject matter and supersedes all prior agreements, quotes, discussions, negotiations, and representations, whether oral or written, related to its subject matter.

1.3. 1.3. <u>Headings and Reference</u>. The division of this Agreement into articles, sections, paragraphs and other subdivisions and the insertion of headings are for convenience of reference only and will not affect the interpretation of this Agreement. "Article", "Section" or "Exhibit" refers to the specified article, paragraph, subparagraph, other subdivision, or schedule of or to this Agreement.

## 2. 2. PURPOSE

This Agreement consists of the terms and conditions under which Valnet may issue to the Service Provider Statements of Work (as defined herein) to perform professional services during the Term (as defined herein). Each such Statement of Work shall be governed by the terms and conditions herein unless the Statement of Work in question expressly provides otherwise.

## 3. 3. PURPOSE

3.1. 3.1. It is expressly agreed between the parties that Service Provider, in rendering the Services in virtue of the Agreement or any SOWs, acts as an independent contractor and not as an employee or agent of Valnet. If applicable as per Canadian status, Service Provider recognizes that, in virtue of its status as an independent contractor, it is entirely responsible for the allocation of applicable sums to be remitted to various governmental ministries

and/or agencies, notably but not limited to the provincial and federal revenue agencies, the *Commission de l'assurance-emploi*, and the *Commission de la santé et de la sécurité du travail du Québec*. The Parties hereby acknowledge and agree that each is an independent contractor, that neither Party shall be considered to be the agent, representative, master or servant of the other for any purpose whatsoever, and that neither Party has any authority to enter into any contract, to assume any obligations or to give any warranties or representations on behalf of the other Party hereto.  Consequently, Service Provider does not benefit from any social benefit, nor does he/she participate in any pension or employee plan of any kind.

3.2.  3.2.  In relation to the United States, Service Provider shall be an independent contractor, and not an employee of Valnet, within the meaning of all federal, state and local laws and regulations governing employment insurance, workers' compensation, industrial accident, labor and taxes of the United States. Valnet shall not be liable for employment or withholding taxes respecting Service Provider. Service Provider shall not, by reason of this Agreement or any SOW, acquire any benefits, privileges or rights under any benefit plan operated by Valnet or its subsidiaries or affiliates for the benefit of their employees, including, without limitation, (i) any pension or profit-sharing plans or (ii) any plans, coverage or benefits providing worker's compensation, medical, dental, disability or life insurance protection.

## 4.  4.  SERVICES

4.1.  4.1.  <u>Scope of Services</u>. The Parties agree that the Service Provider shall, at Valnet's request, perform professional services for Valnet. Such Services (as defined in the individual Statement of Work) will be requested based on Valnet's needs. Each mandate will be attributed by Valnet to the Service Provider and separately described and agreed to in a separate document referencing this Agreement (a "Statement of Work").

4.2.  4.2.  <u>Statement of Work</u>. If and when required, Valnet will request from the Service Provider, in writing, to perform Services through a Statement of Work exhibit ("SOW"). The Parties shall complete and execute a SOW to acknowledge their agreement on the SOW terms. Each executed SOW shall form part and be governed by the terms and conditions of this Agreement. Notwithstanding the signature of this Agreement, Valnet shall have no obligation to request any SOW or otherwise request services from Service Provider.

4.3.  4.3.  <u>Subcontractors</u>. The Service Provider may not use subcontractors for the provision of any portion of the Services hereunder without the prior written consent of Valnet.

4.4.  4.4.  <u>Re-performance of Services</u>. If Valnet believes the Services provided hereunder or any portion thereof do not comply with the terms of the SOW or this Agreement, Valnet shall promptly notify the Service Provider to permit the Service Provider an opportunity to investigate. If the Services do not meet the applicable standard of care, the Service Provider will promptly re-perform the Services at no additional cost to Valnet, including assisting Valnet in selecting remedial actions.

4.5.  4.5.  <u>Suspension of work</u>. Valnet may suspend the work on a SOW or any part thereof at any time. During the period of suspension, Valnet shall pay all unavoidable costs and expenses reasonably incurred by the Service Provider with respect to said suspension, upon the Service Provider providing satisfactory evidence of same. Upon receipt of written notice from Valnet, the Service Provider shall promptly resume the work on such SOW.

4.6.  4.6.  It is expected that Service Provider shall be available to provide the Services detailed in a SOW to Valnet at such times as may be reasonably requested by Valnet and mutually agreed to by Service Provider. Service Provider shall use its best efforts to perform faithfully and efficiently the Services detailed in a SOW. Service Provider agrees and understands that the Services and Materials must be submitted in a timely fashion as stipulated and demanded by Valnet without delay. Time is of the essence.

4.7.  4.7.  Service Provider acknowledges that quality work submitted to Valnet shall be deemed acceptable at the sole and unfettered discretion of Valnet. Any work not deemed acceptable shall not be considered submitted and compensated as per the following agreement.

4.8.  4.8.   If so applicable, any captions or voice over shall be in the English language (or as otherwise instructed), in accordance with Valnet's instructions and directives.

4.9.  4.9.  Valnet shall be under no obligation to credit Service Provider.

4.10.      4.10.        Service Provider acknowledges that the Productions submitted shall be exclusive to Valnet and may not be sold, reproduced, distributed, or appear in any manner on any other website, production company, etc. whatsoever. The Service Provider may showcase the Work Product and/or Productions as part of its portfolio with proper credit to the Websites/Valnet. Such portfolio may not be sold or used for commercial purposes.

4.10.1.  4.10.1.   During the term of a SOW and for a period of six (6) months following the termination of said SOW, Service Provider shall not:

4.10.2.  4.10.2.   Solicit or attempt to solicit or to induce, directly or indirectly, any business from any customers/clients of Valnet with whom the Service Provider had contacts during the term of a SOW;

4.10.3.  4.10.3.      Recruit, hire, or attempt to recruit or hire, directly or indirectly, any employee, contributor or resource of Valnet;

4.11.      4.11.        Solicit or attempt to solicit or to induce, directly or indirectly, any leads (companies that Valnet is contemplating acquiring even partially) or potential acquisition targets, including prospective targets without exception, with whom Service Provider had contacts during the term of a SOW. For the purpose of this Section 4.11.3, "targets, leads and/or potential targets/leads" shall mean any individual and or organization in which Valnet has expressed an interest in exploring a future acquisition.

In the event of a breach of the provisions of this Section 4.11, Valnet shall be entitled to an injunction restraining Service Provider from violating the provisions of this Section 4.11. Nothing herein shall be construed as prohibiting Valnet from pursuing any other remedies available to Valnet, including the recovery of damages and attorneys' fees, for a breach or threatened breach of this Section 4.11.

4.12.      4.12.            Service Provider shall be responsible for his/her own office and administrative related equipment including but not limited to computers, telephones, etc.

4.13.      4.13.            Valnet shall review the Work submitted, should Valnet require any modifications, Service Provider will comply before finalizing the Work.

4.14.        4.14.            Service Provider is expected to design its own production pipeline; this may include third parties or external professionals (in accordance with Section 4.3 herein) in order to achieve the objectives, set out.

5.    5.    **PRICE AND PAYMENT**

5.1.    5.1.    Price (fees and expenses) for the Services shall be contained in each SOW and may be fixed or estimated (if the work is performed on a "time and material" basis).

5.2.    5.2.    In the case of a SOW performed on a "time and material" basis, the estimated price shall be based on the anticipated hours of services to be provided multiplied by Service Provider's Billing Rates and shall include all expenses (the "Estimated Price"), but shall exclude applicable sales taxes. Should the Service Provider expect the actual price for a SOW to exceed the Estimated Price contained therein, the Service Provider shall immediately notify Valnet in writing. Should Valnet agree to a revised price estimate, the Parties shall amend and execute a revised SOW to acknowledge such price increase. No price increase shall be valid, and Valnet shall not pay for any costs in excess of the Estimated Price unless approved in a SOW signed by the Parties.

5.3.    5.3.    Service Provider shall be paid out on the 1st and 16th every month by Valnet unless provided otherwise in a SOW. If the 1st or the 16th of the month fall on a weekend or a statutory holiday, you will receive payment on the following business day. The following is subject to change with notification.

5.4.    5.4.    Service Provider shall only be paid out once the work is eligible to be paid out. The work is eligible to be paid out 15 days after it is published. Once deemed eligible by Valnet, Service Provider will be paid out on the following pay out date.

6.    6.    **INTELLECTUAL PROPERTY & CONFIDENTIALITY**

6.1.    6.1.    Work Product contributed by Service Provider hereunder shall be considered a "work made for hire" as defined by the copyright laws of Canada and the United States. Valnet shall be the sole and exclusive owner and copyright proprietor of all Work Product, rights, and title in and to the results and proceeds of Service Provider's Services hereunder in whatever stage of completion. If for any reason the results and proceeds of Service Provider's Services hereunder are determined at any time not to be a "work made for hire", Service Provider hereby irrevocably transfers and assigns to Valnet all right as of the date of creation, all title and interest therein, including all copyrights, as well as all renewals and extensions thereto.

6.2.    6.2.    Service Provider hereby irrevocably assigns to Valnet all right, title and interest in the Work Product submitted, including but not limited to all copyrightable materials/work submitted by Service Provider for Valnet during the term of this Agreement and any SOW. Valnet shall be deemed copyright owner of Work Product and shall have the right to use, adapt or change the Work Product in any way Valnet deems appropriate. Nothing in this Agreement or any SOW shall require Valnet to exhibit or publicize the Work Product. Service Provider shall execute, acknowledge, and deliver to Valnet any required assignment or instrument as Valnet deems necessary or desirable to evidence, protect, enforce or defend its rights or title in or to the Work Product or any part thereof.

6.3.    6.3.    Valnet shall own and have the right to use the Work Product in all markets and media, now or hereafter known throughout the world in perpetuity, without further compensation

to Service Provider. Furthermore, Valnet shall, at its sole discretion, have the right to modify, change or otherwise edit the Work Product in any manner whatsoever.

6.4.  6.4.    Service Provider hereby irrevocably assigns and grants to Valnet the entire and exclusive property of all copyrights, proprietary rights and any other rights, title, and interest it shall or may have in and to the Work Product, including without limiting the generality of the foregoing, the rights below described, which are intended to be and agreed to be exclusive, unlimited, perpetual and worldwide.

6.5.  6.5.    Acknowledgment of Rights. Once transferred, Service Provider hereby acknowledges and agrees that it shall have no copyright, proprietary right or any other right, title, and interest in or to (a) the Work Product (b) the images and (c) the website.

6.6.  6.6.    Moral Right. Valnet shall have the unlimited and absolute right to change, alter, revise, add to or delete from the Work Product, in its sole discretion, as well as the rights to combine the Work Product furnished or created by others and to authorize the execution of any of the aforesaid acts. Service Provider hereby waives any and all moral rights he may have in the Work Product, both on its own behalf and on behalf of its heirs, executors and administrators, subject only to those rights specifically reserved in this Agreement or any SOW.

6.7.  6.7.    Any and all trademarks, copyright and all trademarks, copyrights and other intellectual property belonging to Valnet associated or not with any Assets (wordmark, logo, etc.) shall remain the exclusive property of Valnet and may not be used without authorization or permission.

6.8.  6.8.    Valnet Property. The Service Provider acknowledges that any document, equipment, Confidential Information (as defined hereafter) and any other property of Valnet or its affiliates including without limitation, any file, work, document, sample, model, plan, mark-up, film, records, sketches, drawings, letters, reports, materials, images, songs, equipment, discs, tapes, CDs or estimate, directly or indirectly related to the business of Valnet, which may be removed from the premises or taken or shared from computers of Valnet or any of its affiliates, shall remain the exclusive property of Valnet or its affiliates and shall be returned immediately upon request and at any time at the termination of this Agreement or any applicable SOW.

6.9.  6.9.    In the event that Service Provider is granted access to Valnet's Google Analytics, Service Provider acknowledges that the Google Analytics is considered Confidential Information as defined herein and should only be used in relation to the Services rendered for Valnet in a SOW and should not be shared with any third party.

6.10.    6.10.        Service Provider acknowledges and agrees that the nature of Services that it is to provide on behalf of Valnet involves the utilization of information, which is proprietary to the Valnet and shall be kept secret at all times. Service Provider acknowledges and agrees that the unauthorized disclosure, use and/or dissemination of such secret and confidential information would cause irreparable damage to the Valnet. Service Provider agrees not to divulge, disclose, or communicate to any person, firm, or corporation at any time, during or after the present Agreement in any fashion, form or manner, either directly or indirectly, any information of any kind, nature, or description concerning any matters affecting or relating to the business of Valnet or Service Provider's Services with Valnet which specifically includes any matter whatsoever concerning the Valnet, its subsidiaries, divisions or affiliated companies (collectively referred to hereafter as "Confidential

Information"). The Parties agree that Confidential Information includes, without limiting the generality of the foregoing, the analytical statistics of Valnet's assets, the strategies behind its productions, video montage, copyright policies and procedures, licensing & licensing agreement, internal policies, research, development, inventing, accounting, computer hardware configuration, computer software, source code, manufacturing, engineering, merchandising, equipment, or any other information of, about, or concerning the business of Valnet or the business of customers of Valnet, its manner of operation, its plans, processes, or other data of any kind, nature, or description, without regard to whether any or all of the foregoing matters would be deemed confidential, material, or important. The Parties agree that the above matters are important, material, and confidential and gravely affect the effective and successful conduct of the business of Valnet, and its goodwill, and that any breach of the terms of this paragraph is a material breach hereof.

## 7.   7.   INDEMNIFICATION

7.1.  7.1.   <u>Indemnity</u>. To the extent permitted by law, the Service Provider agrees to indemnify, defend, and hold harmless Valnet and its directors, officers, shareholders and employees from and against any liability (including without limitation, reasonable costs and attorneys' fees) incurred by Valnet to the extent caused by the Service Provider's negligent acts, errors or omissions, including judgments in favor of any person.

7.2.  7.2.   <u>Setoff</u>. In the event the Service Provider owes Valnet any amounts under this Agreement and/or any SOW, Valnet reserves the right to set-off and compensate against any amounts due or payable to the Service Provider.

## 8.   8.   SERVICE PROVIDER REPRESENTATIONS

The Service Provider hereby represents and warrants that:

8.1.  8.1.   The Service Provider, if an entity, is duly constituted and validly subsisting under the laws of its jurisdiction of incorporation or a person;

8.2.  8.2.   The Service Provider has all requisite power, legal capacity and authority to enter into this Agreement and/or any SOW and to perform its obligations in accordance with the terms of this Agreement and/or any SOW;

8.3.  8.3.   There are no known claims pending, threatened or anticipated and there is no litigation or proceeding that would have a material adverse effect on the ability of the Service Provider to perform its obligations hereunder;

8.4.  8.4.   The Service Provider is qualified to carry on business in all the jurisdictions where each SOW is to be performed or delivered;

8.5.  8.5.   The Service Provider will be legally authorized to perform each SOW and will hold all required permits, certificates and licenses to perform the services thereunder;

8.6.  8.6.   The Service Provider is familiar with the codes, standards and guidelines referenced in the specifications detailed in a SOW, as applicable;

8.7.  8.7.   The Work Product will be a wholly original expression of Service Provider and shall not be copied in whole or in part from any copyrighted work, except for the material submitted

to Service Provider by Valnet;

8.8.  8.8.  To the best of Service Provider's knowledge, information and belief, any Work Product will not violate or infringe upon the rights to privacy of any person, and shall not constitute libel or slander of any person or entity;

8.9.  8.9.  To the best of Service Provider's knowledge, information and belief, it will not violate or infringe upon the copyright, property rights or moral rights or any person or entity;

8.10.    8.10.        Service Provider has not made or will not make any grant or deed which might or will conflict with or impair the complete enjoyment of the rights and privileges granted to Valnet hereunder;

8.11.    8.11.        The stated warranties and representations stated in this Section 8 are effective and shall be deemed effective as the completion of a SOW;

8.12.    8.12.        Any and all resources made available to Service Provider including but not limited to stock footage, video, footage, audio music libraries, databases, etc… shall be used exclusively for the purposes of this Agreement and any applicable SOW without exception;

8.13.    8.13.        Should the Service Provider utilize exclusive footage (created and wholly owned by the Service Provider) it shall obtain all necessary releases, disclaimers and notify Valnet that exclusive footage is utilized in the Work Product;

8.14.    8.14.        Service Provider shall not publicly state it is the creator and/or owner of the Work Product in any manner if Service Provider is not the creator and/or owner of the Work Product;

8.15.    8.15.        Service Provider shall not use any of the Work Product used for any other third party or itself without exception.

## 9.  9.  TERMINATION & SURVIVAL

9.1.  9.1.  <u>Survival.</u> The provisions of Sections 3, 5, 7, 8, 9 and 10 shall survive the termination or expiration of this Agreement;

9.2.  9.2.  Term and Termination:

9.2.1.9.2.1. This Agreement shall be effective for a period of12 months from the Effective Date. No SOW shall be executed thereafter;

9.2.2.9.2.2. Valnet may, at its sole discretion, terminate this Agreement or a SOW at any time upon written notice to the Service Provider. Valnet shall pay Service Provider for all fees for the services rendered up to the date of termination, upon the Service Provider providing satisfactory evidence of same;

9.2.3.9.2.3. Service Provider may terminate this Agreement or a SOW upon 7-day prior notice to Valnet;

9.2.4.9.2.4. The termination of this Agreement shall be without prejudice to the rights and

remedies of the Parties accrued prior to termination;

9.2.5.9.2.5. Upon termination of this Agreement, the Service Provider shall, and shall cause all of its subcontractors, to:

a)  a)   deliver to Valnet any documents or deliverables in accordance with this Agreement;

b)  b)   promptly return to Valnet all materials, equipment and any Confidential Information provided by Valnet or Valnet's representative.

9.2.6.9.2.6. In no event shall Valnet be liable for any form of compensation, termination pay and/or severance in situations of termination, even if the Service Provider completed twelve (12) consecutive months of continuous Service before their termination, as the Service Provider is not an employee or agent of Valnet as alleged in Section 3;

9.2.7.9.2.7. <u>Cessation/Death/Incapacity</u>. This Agreement shall terminate automatically upon the cessation of business of Service Provider or upon the death or incapacity of Service Provider;

9.2.8.9.2.8. <u>Breach</u>. This Agreement may be terminated by either Party upon a breach of a material term or condition of this Agreement which breach is not cured within five (5) days from written notice from the non-breaching Party;

9.2.9.9.2.9. <u>Obligations upon Termination</u>. Upon termination of this Agreement (i) neither Service Provider nor Valnet shall have any further obligations under this Agreement, except for the obligation to pay Service Provider for any unpaid Services rendered and any approved and unpaid expenses incurred prior to the termination, as well as any obligations under Sections 5 through 10 of this Agreement; (ii) Service Provider shall return all Valnet equipment, Work Product and Confidential Information within five (5) days at Valnet's expense;

## 10.  10.  MISCELLANEOUS

10.1.       10.1.             <u>Independent Contractor</u>. It is expressly agreed by the Service Provider and Valnet that the Service Provider shall have the status of an independent contractor and that the Service Provider shall not be considered an employee of Valnet for any reason or purpose whatsoever. Under no circumstances shall Service Provider consider Valnet as its/his employer, partner, commercial agent, associate or principal. The Service Provider shall not acquire, benefit from or enjoy any of the rights, privileges, powers, or advantages of the employees of Valnet including, without limitation, worker's compensation benefits, disability insurance, vacation, or sick pay, or any other benefits available to Valnet's employees.

10.2.       10.2.             The Service Provider acknowledges that it is not authorized to act on behalf of or otherwise bind Valnet to negotiate or execute contracts on behalf of Valnet, or to represent to any Person that Service Provider has the power to create any obligation on behalf of Valnet. Furthermore, the Service Provider acknowledges that it cannot contract any expenditure on behalf of Valnet without the prior consent of Valnet.

10.3.       10.3.               <u>Fees and Expenses</u>. Each Party shall pay its own legal and other expenses incurred in connection with the negotiation, preparation, entering into and

performance of this Agreement and/or any SOW and the transactions it contemplates.

10.4.      10.4.      <u>Further Assurances</u>. A Party shall promptly do, sign, deliver or cause to be done, signed and delivered all further acts, documents and things that the other Party may reasonably require for the purposes of giving effect to this Agreement.

10.5.      10.5.      <u>Notices</u>. Any notice, consent or other communication under this Agreement shall be given in writing and delivered by hand, by registered mail, by bailiff or sent by fax or by email (with confirmation of transmission), and addressed as follows:

> if to Valnet:
> Valnet Inc.
>
> Attention: Yury Smagorinsky
> Email: legal@valnetinc.com
>
> if to Service Provider:
> Daniel Quintiliano
>
> Attention:Daniel Quintiliano
> Email:idanielq1@gmail.com
>
> Such notice, consent or other communication will be deemed to have been given and received on the day it is actually delivered or sent (or if that day is not a Business Day, on the following Business Day), unless it is delivered or sent after 4:30 p.m., in which case it will be deemed to have been given and received on the next Business Day.
> A Party may, from time to time, designate another address in accordance with this Section.

10.6.      10.6.      <u>Severability</u>. Each provision of this Agreement and/or SOW is separate and distinct and, if a provision of this Agreement and/or SOW is determined to be invalid, illegal, or unenforceable, all other provisions will remain in full force and effect.

10.7.      10.7.      If applicable, all Canadian companies, individuals, etc. shall duly notify Valnet if GST, QST or HST (as applicable by law) is to be included in compensation and shall duly include all said sales taxes in an invoice. Said invoice shall clearly indicate all sales tax numbers for which the writer is duly registered.

10.8.      10.8.      <u>Guild and Unions.</u> This Agreement and/or SOW shall not be governed by the terms of the Writers' Guild of Canada or the United States and/or any collective agreement thereof, nor any other guild agreement.

10.9.      10.9.      <u>Waivers.</u> A failure to act or delay in acting by a Party with respect to a non-performance, or the non-exercise of a right, under this Agreement and/or SOW will not operate as a waiver of that performance or of that right. The waiver of a right under this Agreement and/or SOW by a Party will not be effective unless it is given in a signed writing, in which case it will be effective in the specific instance and for the specific purpose given.

10.10.      10.10.      <u>Default.</u> The debtor of an obligation under this Agreement and/or SOW will be in default of that obligation by the mere lapse of time for performing it.

10.11.      10.11.      <u>Successors and Assigns</u>. This Agreement and/or SOW will bind and be

for the benefit of a Party's successor or permitted assign.

10.12.    10.12.    <u>Assignment</u>. The Service Provider may not assign or delegate any right or obligation under this Agreement and/or SOW without the prior written consent of Valnet. Valnet may assign all its rights and obligations under this Agreement and/or SOW without the prior written consent of the Service Provider.

10.13.    10.13.    <u>Amendment</u>. This Agreement and/or SOW may only be amended in a writing signed by each Party.

10.14.    10.14.    <u>Conflict</u>. In the event of any inconsistency, the following documents shall have the following order of precedence: (i) this Agreement; (ii) a SOW.

10.15.    10.15.    <u>Governing Laws and Jurisdiction</u>. This Agreement is governed by the laws of the province of Québec and the laws of Canada applicable therein. The Parties irrevocably submit all disputes arising out of this Agreement to Québec courts, judicial district of Montréal. Pending final resolution of a dispute hereunder, the Service Provider will proceed diligently with the performance of its obligations under this Agreement.

10.16.    10.16.    <u>Language.</u> The parties have expressly required that this Agreement, any SOWs and notices relating thereto be drafted in the English language. *Les parties ont expressément exigé que la présente entente et les mandats spécifiques en découlant et tous les avis y afférant soient rédigés dans la langue anglaise.*

10.17.    10.17.    <u>Record Documents.</u> Upon completion of a SOW, the Service Provider shall compile and deliver to Valnet a reproducible set of record documents (in electronic native or physical form(s), as required by Valnet) based upon the work completed, including any marked-up record drawings, addenda, deliverables or other work data.

10.18.    10.18.    <u>Counterparts</u>. This Agreement and/or SOW may be signed in any number of counterparts, each of which is deemed to be an original and all of which taken together is deemed to constitute one and the same instrument. Each counterpart may be delivered by fax or email and a faxed or emailed copy is as effective as an original.

*[Signatures to follow]*

IN WITNESS WHEREOF, by their signatures below, the Parties hereto acknowledge that they have reviewed carefully what has been expressed in this Agreement, which they understand is a legally binding document, and that the understandings and agreements expressed in this document are binding upon them as of the Effective Date.

*Grace Belt*
Signed: 11/15/2022
Name:    Gracie Belt
Title:    Talent    Acquisition    Coordinator
Date:    11/15/22

*Daniel Quintiliano*
Signed: 11/15/2022
Name:    Daniel Quintiliano
Title:    News Writer
Date:    11/15/2022

**Statement of Work
("SOW")**

This SOW is entered into based on the Master Services Agreement signed between Valnet Inc., ("**Valnet**"), with its principal place of business at 7405 TransCanada Highway, Suite 100, Montreal, Quebec, H4T 1Z2 Canada, and Daniel Quintiliano ("**Service Provider**"), whose address is 1155 S Grand Ave Unit 806, 90015.

| Master Service Agreement | Effective and executed on November 14, 2022 |
|---|---|
| **Statement of Work Effective Date** | November 14, 2022 |
| **Scope:** | Service Provider shall perform the following services which shall be on an as-needed basis at the sole discretion of Valnet. At a minimum, the services to be provided will include:<br><br>- Provide required output for articles each week/month;<br><br>- Staying up to date with project deadlines;<br><br>- Keep editors up to date. |
| **Additional Specifications** | Please add additional specifications that are relevant or specify if something in the SOW defers from the MSA |
| **Term:** | 12 months<br><br>Under no circumstance shall the Service Provider be entitled to any compensation, termination pay, or severance pay upon termination of the Master Service Agreement or SOW. |
| **Price (please check and specify) or other as detailed:** | ☐ Fixed Price<br><br>■ Amount determined by the Parties through written correspondence |
| **Invoices:** | Each invoice shall include Service Provider's name and address, Valnet's company name and address, date of services rendered, PayPal email address, a description of services.<br><br>In addition to the foregoing, Valnet shall reimburse Service Provider for Service Provider's reasonable expenses actually incurred in performing the Services so long as such expenses were pre-approved in writing by Valnet. Expenses (with respect to those necessary to carrying out the services listed in the Agreement or SOW and pre-approved by Valnet) shall be reimbursed during the regular payment period. If applicable, it shall be the responsibility of Service Provider to add any expenses to the invoice as well as provide relevant receipts upon submission. |

|  | Payments will be made on the 1st and the 16th of each month via PayPal or other means as discussed. Service Provider will only be paid out once eligible, as detailed in the Master Service Agreement.<br><br>Service Provider shall incur all transaction fees associated with their third party payment method, such as but not limited to Payoneer, Paypal, bank wire transfer etc. |
|---|---|
| **Valnet Representative:** | Gracie Belt |
| **Service Provider Representative:** | Daniel Quintiliano |

[*Signatures to follow*]

## Record of Signing

| For | | For | |
|---|---|---|---|
| Name | **Valnet Inc.** | Name | |
| Title | **Grace Belt** | Title | **Daniel Quintiliano** |

*Grace Belt*

**Signed on 2022-11-15 19:59:47 GMT**

*Daniel Quintiliano*

**Signed on 2022-11-15 19:59:25 GMT**

concord.
Where agreements happen.

Signed with www.concordnow.com